# TEXAS SPORTING GOODS CO. v. TEXAS GULF SULPHUR CO. et al.

## No. 10093.

Court of Civil Appeals of Texas. Galveston. March 15, 1935.

Rehearing Denied April 18, 1935.

McFarlane & Dillard, of Houston, for appellant:

Ingram & Ingram, of Wharton, for appellees.

LANE, Justice.

On the 31st day of December, 1931, the Texas Gulf Sulphur Company issued a check to L. L. O'Neal, one of its employees, for the sum of $128.90, drawn against the Wharton Bank & Trust Company. Such check was delivered by the Texas Gulf Sulphur Company, hereinafter referred to as the sulphur company, to O'Neal at the town of Newgulf, in Wharton county, on the 6th day of January, 1932, six days after its issuance. Upon receiving the check, O'Neal indorsed the same in blank and mailed it to the Wharton Bank & Trust Company at Wharton, Tex., and on the same day, or the following day, the post office at Wharton was burglarized, and the check, among other mail matter, was stolen. Upon hearing of such theft, at the request of its employee, L. L. O'Neal, the payee in the check, the sulphur company stopped payment of the same. On the 9th day of January, 1932, a man unknown to any of the officers or employees of the Texas Sporting Goods Company approached a salesman of said company for the purpose of purchasing a gun, which was priced to him at $28. Having agreed to purchase the gun, the purchaser tendered to the salesman the aforementioned check, together with some kind of employment card purporting to have been issued by the sulphur company, and in turn the salesman handed the same to W. B. Barnhill, vice president and general manager of the Texas Sporting Goods Company, who, after looking at the check and card, accepted the check, authorized the delivery of the gun to the stranger, and paid to him the difference between the price of the gun and the amount called for in the check. Upon the taking of the check by the sporting goods company it placed the same in the hands of the First National Bank of Houston for collection, and in a few days, not more than four, the check was forwarded to the Wharton Bank & Trust Company for payment.

The Wharton Bank refused payment, as did the sulphur company and L. L. O'Neal.

This suit was brought by the Texas Sporting Goods Company in the court of the justice of the peace of Wharton county against the Texas Gulf Sulphur Company, L. L. O'Neal, and the Wharton Bank & Trust Company to recover upon the check mentioned in the foregoing preliminary statement.

The Texas Gulf Sulphur Company answered by a general denial, and specially pleaded as follows: "And for further answer herein this defendant now says that the alleged check or draft sued on by plaintiff, if the same was in fact ever issued or signed by any of the defendants hereto, which facts are not herein admitted by this defendant, was stolen from the rightful owner thereof, and payment thereon stopped, and that plaintiff took the same without using proper care to identify the holder thereof and after maturity. Wherefore, this defendant says that the consideration for which said check or draft was given has wholly failed and this he is ready to verify, and that plaintiff is not a holder in due course."

Judgment was rendered in the justice's court that the plaintiff take nothing by its suit and that it pay all costs of suit.

The cause was carried to the county court of Wharton county by appeal. In the county court the trial was had before the court without a jury, and judgment was there rendered that plaintiff take nothing by its suit against any of the defendants and that plaintiff pay all costs of suit. The plaintiff has appealed to this court.

For reversal of the judgment, appellant contends: That it is shown by the agreed facts found in the record upon which this cause was tried that the check in question was issued by the sulphur company to L. L. O'Neal on the 31st day of December, 1931. That it was drawn on the Wharton Bank & Trust Company. That, after it had been delivered to O'Neal, he indorsed the same in blank at the town of Newgulf, deposited it in the mail addressed to Wharton Bank & Trust Company, at Wharton, Tex. That such check was stolen by some unknown person and it never reached the Wharton Bank, and the bank was immediately notified not to pay the check. That on the 9th day of January, 1932, the Texas Sporting Goods Company, for a valuable consideration and in due course, purchased said check from a stranger at Houston, some 60 miles from either Wharton or Newgulf. "That agents of the Texas Sporting Goods Company at the time said

check was presented to it for purchase of a gun were not acquainted with L. L. O'Neal, and that said company was then without knowledge that the bearer of the check was not, in fact, L. L. O'Neal, and *that said company was without notice of any fact which would put it upon notice that the bearer of said check was not, in fact, L. L. O'Neal.* (Italics ours.)

That after the check was purchased by Texas Sporting Goods Company on the 9th day of January, 1932, it, through its Houston bank, forwarded it to the Wharton Bank for payment, the same reaching the Wharton Bank on the 13th day of January, 1932. That payment of the check was refused. Wherefore appellant contends substantially that it was shown by the agreed facts that it purchased the check, a negotiable instrument, in due course without any notice of any fact which would put it upon inquiry as to whether the bearer of the check from whom it purchased was the true and lawful owner of said check. That, such being shown by said agreed facts, the trial court erred in rendering judgment for appellee against appellant, such judgment being based upon fact findings of the trial judge, which are not supported by any evidence, and which in effect are contradictory to the facts as agreed to by the parties to this suit.

Appellant also contends that there was no evidence to support any finding that appellant, in the purchase of the check, acted in bad faith or that such check was not under the facts presented for payment within a reasonable time. Wherefore the trial judge erred in finding to the contrary as a basis for the judgment rendered.

We think under the agreed facts upon which the case was tried judgment should have been rendered by the trial court for appellant, and that judgment should be here rendered reversing the judgment of the trial court, and judgment rendered for appellant as prayed for.

The conclusions above expressed are, we think, supported by the following authorities: Revised Civil Statutes, article 5934, § 34; article 5935, § 56; same article, § 57; article 5947, § 185; same article, § 186; article 5948, § 193; Ford v. Smith (Tex. Civ. App.) 274 S. W. 166; 8 Corpus Juris, p. 796, § 1052; Austin State Commissioner of Banking v. Wasaff (Tex. Civ. App.) 284 S. W. 694; Sheldon v. Stevens (Tex. Civ. App.) 41 S.W. (2d) 146; Spurlock v. Zaring (Tex. Civ. App.) 270 S. W. 1099.

We quote from the authorities cited as follows:

Article 5934, § 34: "An indorsement in blank specifies no indorsee, and an instrument so indorsed is payable to bearer, and may be negotiated by delivery."

Article 5935, § 56: "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Article 5935, § 57: "A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

Article 5947, § 185: "A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check."

By section 186 of article 5947 it is provided that, in case a check is not presented for payment within a reasonable time after its issue, the drawer thereof will be discharged from liability thereon to the extent, and only to the extent, of the loss, if any, caused by such unreasonable delay in presenting it for payment.

Article 5948, § 193: "In determining what is a 'reasonable time' or an 'unreasonable time,' regard is to be had to the nature of the instrument, the usage of trade or business (if any) with respect to such instruments, and the facts of the particular case."

8 Corpus Juris, p. 796, § 1052: Inasmuch as a negotiable bill or note duly executed and delivered and payable to bearer or indorsed in blank passed by delivery, it is well settled that such a bill * * * is enforcible by a bona fide purchaser, and he is entitled to the proceeds, thereof, although he obtained it through one not the owner, who had stolen it or otherwise unlawfully obtained it, and this is the rule under the negotiable instrument law."

In Ford v. Smith (Tex. Civ. App.) 274 S. W. 166, it is held that one in possession of a note indorsed in blank is a holder thereof, within the meaning of uniform negotiable instrument acts.

In Spurlock v. Zaring (Tex. Civ. App.) 270 S. W. 1099, it is held that the ordinary rules as to notice in the purchase of property generally do not apply to negotiable instruments; that one may have notice of facts from which he could have suspected that there was an infirmity in the negotiable instrument, still his purchase of such instrument would not amount to bad faith.

In First National Bank v. Chapman (Tex. Civ. App.) 164 S. W. 900, at page 902, column 2, we find this recital: "We think the entire question is one of bad faith, and that our Supreme Court adopted this rule as early as the case of Greneaux v. Wheeler [6 Tex. 515]. Judge Hemphill said, in Weathered v. Smith, 9 Tex. [622] 625 (60 Am. Dec. 186): 'The possession of the instrument, acquired in good faith in the usual course of trade, gives property, whether the person from whom it was received have title or not. This doctrine, founded on the necessity of securing the benefits accruing from the free circulation of commercial paper, had its origin in the case of Miller v. Race, 1 Burr. 452, in application to bank notes, and was subsequently extended to all negotiable instruments transferable by delivery.' Thus early in our state was this most salutary principle from the older commercial states and from England adopted; at a time, too, when its commerce was in its infancy. It is a rule that is now far more imperatively demanded by our commercial interests, which have since then grown to much greater proportions than they were in those days."

It is also in said case substantially stated that the rule that "notice of facts sufficient to put a man of ordinary prudence upon inquiry" has no application to a purchaser of a negotiable instrument for value.

The parties had agreed to try the cause on an agreed statement of facts, which is copied into the record, and in such agreement it is stated, in effect, that the agreement was that all the facts given in evidence and all evidence adduced are incorporated in such agreement as set out in the agreed statement of facts which appear in the record, and in such agreement it is, among other things, stated as follows: "That agents of the Texas Sporting Goods Company at the time said check was presented to it for the purchase of the gun were not acquainted with Mr. L. L. O'Neal, and that said Company was then without knowledge that the bearer of the check was not, in fact, L. L. O'Neal, and that said Company was without notice of any fact which would put it upon notice that the bearer of said check was not, in fact, L. L. O'Neal."

 We think the proper judgment to be rendered in the case should be based upon the agreed facts and not upon the finding of facts made by the trial judge at the request of one of the parties, such requesting party not shown by the record, and such finding being contradictory in several essential matters to the agreed statement of facts.

For the reasons pointed out, the judgment of the trial court is reversed, and judgment is here rendered for appellant against all of the defendants for the sum of $128.90 as sued for.

Reversed and rendered.